JOHN WATTS, APPELLANT, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

165 N. W. 2d 104

Filed February 20, 1969. No. 37027.

Shrout, Nestle & Caporale, for appellant.

Herbert M. Fitle and Walter J. Matejka, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN and NEWTON, JJ., and WALTER H. SMITH, District Judge.

SMITH, Walter H., District Judge.

This is an appeal from a judgment of the district court for Douglas County denying a writ of mandamus. Appellant John Watts, hereinafter referred to as Watts, brought this action to compel appellees, hereinafter referred to as the City of Omaha, to pass a resolution to pay full monthly salary benefits for permanent disability received by Watts while in line of duty.

Watts, a man 55 years of age, joined the Omaha Police Department in 1934 and served on the police force for 33 years. During this period he sustained personal injuries in the line of duty on December 27, 1934, September 10, 1937, August 16, 1952, and on February 11, 1959, and, because of his disability, he has been off duty from August 2, 1967. The Police, Fire and Pension Board, on December 21, 1967, granted Watts a disability pension

under section 7.38.180 of the Omaha Municipal Code, also known as ordinance No. 21668, which was passed on March 28, 1961, and he was found by the board to be permanently unfit for active duty in his division. The amount of the monthly pension granted by the Police, Fire and Pension Board was in the amount of one-half of the average monthly pay for the period of his 5 highest pay years. It was stipulated by the parties that section 7.38.180 of the Omaha Municipal Code is as follows: "Any member of the system who, while in the line of duty, has sustained or shall sustain injuries or sickness, arising out of the immediate or direct performance or discharge of his duty, which immediately or after a lapse of time permanently unfit him or her for active duty in his or her Division, shall receive a monthly accidental disability pension as long as he or she remains unfit for active duty in his or her Division, equal to fifty per cent of his or her average final monthly compensation. In addition thereto, he or she shall be paid all medical, surgical, and hospital expenses which may be incurred as a result of such sickness or injury, but the pension and other benefits, being in excess of benefits under the Workmen's Compensation Act, shall be in lieu thereof.

"Nothing contained in this section shall be construed as limiting, altering, repealing or affecting the authority of the City Council to grant full salary payments pursuant to Section 7.36.195 of the Omaha Municipal Code, provided however, any member receiving full salary payments shall not be entitled to the benefits of this section during the period full salary payments are authorized and paid. (Ord. 21668 § 1; March 28, 1961)."

On February 7, 1968, Watts made application to the City Council of the City of Omaha for full monthly salary disability pension under section 7.36.195 of the Omaha Municipal Code, as amended, also known as ordinance No. 24441, which was passed on October 17, 1967, and became effective 15 days after its passage. By

stipulation of the parties, ordinance No. 24441 was admitted into evidence, the pertinent parts of which are as follows: "Notwithstanding the provisions of Section 7.36.060, Section 7.36.180, Section 7.36.190 and Section 8.24.010 of the Omaha Municipal Code, or any other Section or provision of the Omaha Municipal Code in conflict herewith, any member of the Police or Fire Division of the Public Safety Department, who, while in the line of duty, has sustained or shall sustain injuries or sickness, arising out of the immediate or direct performance or discharge of his duty, which render him permanently and totally unfit for active duty in his department, and to perform or follow other gainful pursuits or employments, shall be paid his full salary for the period of such permanent total disability, provided however, such full salary payments shall not be paid after such disability shall cease; and provided further, that such full salary payments shall not be paid until and after the City Council shall determine by Resolution, from the evidence and the facts and circumstances of each case presented to it for consideration, that the injured party was in line of duty; that the injuries or sickness sustained by the injured party arose out of the immediate or direct performance or discharge of his duty; that the injured party is permanently and totally unfit for active duty in his department, and to perform or follow other gainful pursuits or employments, and by resolution, authorizes the full salary payments. The full salary payments herein provided for shall accrue and be payable only from and after the date the City Council authorizes them."

A hearing was held before the City Council of the City of Omaha on February 13, 1968, on the application of Watts under section 7.36.195, as amended, also known as ordinance No. 24441, and the request for full monthly salary disability pension was denied by the City Council. Thereupon Watts filed a petition for writ of mandamus to direct the City of Omaha to pass a resolution

authorizing payment of full monthly salary benefits to him and, after hearing thereon, the petition was dismissed by the trial court and appeal taken to this court.

The principal question to be decided is whether the determination made by the City Council of the City of Omaha, in denying the application for a full salary disability pension under section 7.36.195, was judicial or ministerial in nature. If such action is ministerial, then mandamus is the proper remedy; on the other hand, if it is judicial in nature then mandamus will not lie and it is reviewable in the district court by way of petition in error or appeal. § 25-1901, R. R. S. 1943; Little v. Board of County Commissioners, 179 Neb. 655, 140 N. W. 2d 1.

Watts contends that a writ of mandamus should have been granted by the district court compelling the City of Omaha to pass a resolution ordering that full monthly salary pension be paid to Watts on the basis of total permanent disability and that the passage of said resolution is a ministerial and not a quasi-judicial act and that mandamus is the proper remedy. The position of the City of Omaha is that mandamus does not lie inasmuch as the City Council of the City of Omaha was acting in a quasi-judicial capacity and not ministerial and that Watts has an adequate remedy at law by writ of error or regular appeal.

The evidence before the City Council of the City of Omaha consisted of a written statement from Watts in which he stated: "The purpose of this letter is to make application to the City Council of the City of Omaha for full salary during the period of permanent total disability under Section 7.36.195 as amended of the Omaha Municipal Code." The statement also set forth his injuries received in the line of duty and the medical examinations and treatments given by various doctors and at the County Hospital. The report of Dr. Kenneth M. Reighter, dated December 18, 1967, one of the physicians who examined Watts, which was received as evidence by the

City Council, concluded with the statement: "From what I understand now, these injuries have practically disabled Sgt. Watts from further police duty." Relative to the injuries received by Watts, a photocopy of a newspaper story of December 28, 1934, pertaining to the accident on December 27, 1934, a written statement of a city patrolman pertaining to the injuries received by Watts on September 10, 1937, and the casualty report of the Omaha Police Department relative to the accident on February 11, 1959, were also received as evidence by the City Council. Watts did not personally testify before the council.

Section 25-2156, R. R. S. 1943, provides: "The writ of mandamus may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station. Though it may require an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, it cannot control judicial discretion." Section 25-2157, R. R. S. 1943, provides in part: "The writ of mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law."

In State ex rel. Gaddis v. Bryan, 102 Neb. 506, 167 N. W. 783, in rendering its decision on an application for a fireman's pension the court held that the governing board of the city exercised judicial discretion that would not be controlled by mandamus and said: "The rule is well established that mandamus will lie against a public board to compel the performance of purely ministerial duties, but not to control the exercise of judicial functions. State v. Churchill, 37 Neb. 702. A duty is deemed to be of a judicial nature when it calls for the determination of a question of fact involving the examination of evidence and the passing on its probative force and effect." In State ex rel. Ensey v. Churchill, 37 Neb. 702, 56 N. W. 484, the court stated that a "* * * writ of mandamus will not be allowed to compel officers vested

with discretionary powers to make a particular decision
or to set aside one already made, notwithstanding such
decision is erroneous in the sense that it may be re-
versed upon appeal, writ of error, or other appellate
proceeding."

As stated in State ex rel. Garton v. Fulton, 118 Neb.
400, 225 N. W. 28: "Mandamus will not lie to coerce
judicial discretion of an inferior court, nor to predeter-
mine the character of the judgment that the court shall
enter. Mandamus will not issue to review the action of
an inferior court where there is an adequate remedy at
law, and the writ may not be used to usurp or take the
place of an appeal or writ of error." This rule is as ap-
plicable to a city council as it is to a county court. See,
also, State ex rel. Cuming County Farm Bureau v. Tighe,
124 Neb. 578, 247 N. W. 419. A writ of mandamus may
be issued to require an inferior tribunal or board to ex-
ercise its judgment, or proceed to the discharge of any of
its functions, but it cannot control its judicial discretion.
§ 25-2156, R. R. S. 1943; State ex rel. Davis v. Hoctor,
98 Neb. 15, 151 N. W. 923.

While in matters involving official discretion, man-
damus may be used for the purpose of compelling the
exercise thereof, it will not ordinarily be extended be-
yond that, so as to interfere with the manner in which
the discretion shall be exercised or to influence or coerce
a particular determination. 34 Am. Jur., Mandamus,
§ 68, p. 856. "As generally stated, writs of mandamus
will not issue to control the exercise of official discretion
or judgment or to alter or review action taken in the
proper exercise of such discretion or judgment, for the
writ cannot be used as a writ of error or other mode of
direct review. With respect to duties that are not per-
emptory, the officer must be left free to decide whether
he will perform the act demanded or secure by appro-
priate procedure a judicial determination of the extent of
his duty. In such cases, where, as to the facts, there
exists any admissible doubt or reasonable men might

conscientiously differ with respect thereto, the courts have with practical unanimity declined to interfere by mandamus, and whenever an element of discretion enters into the duty to be performed, the functions of mandatory authority are shorn of their customary potency and become powerless to dictate terms to that discretion. In so far as their decision is purely judicial and it appears that they have kept within their jurisdiction, notwithstanding it may appear to another tribunal that their judgment was not sound and that their decisions 'were erroneous, no writ of mandamus will lie to oblige them to adopt any other mode of decision than that which their own judgment sanctions." 34 Am. Jur., Mandamus, § 68, p. 856.

Section 7.36.195 of the Omaha Municipal Code, as amended, also known as ordinance No. 24441, being the provision of the code under which Watts filed his application before the City Council of the City of Omaha for a full monthly salary disability pension, contemplates a hearing, the presentation of proof by evidence not only that Watts was permanently and totally unfit for active duty in his department but also to perform or follow other gainful pursuits or employments, and a decision based thereon by the City Council is a condition precedent to his right to the pension under said section. In this regard it must be noted that the City Council, under section 7.36.195, had an additional finding to make that the Police, Fire and Pension Board did not have to make under section 7.38.180. In passing on the application of Watts, the City Council not only had to determine that he was permanently and totally unfit for active duty in his department but also that he could not perform or follow other gainful pursuits or employments. This necessarily required the City Council to examine and give consideration to the evidence and make decisions of law and fact and in rendering its decision such body was exercising a judicial discretion that will not be controlled by mandamus. Its duty was to consider evidence

and apply the law to the facts as found which comprehends the exercise of discretion or judgment guided by the circumstances and the law and which required the exercise of a discretion or judgment judicial in nature on evidentiary facts. The determination of the City Council must necessarily be the product or result of investigation, consideration, and deliberate human rational judgment, based upon evidentiary facts of some sort; its determination must depend upon and requires the existence or nonexistence of certain facts which must be ascertained and the investigation and determination of such facts causes its act to be quasi-judicial in character. As previously stated, evidentiary facts which the members of the City Council were required to examine necessarily related to not only whether Watts was permanently and totally unfit for active duty in his department but also whether he could perform or follow other gainful pursuits or employments and this necessitated an examination of questions of law and fact and the exercise of judicial discretion. The City Council had to determine from the evidence and the law whether Watts was in fact totally unfit for active duty in his department and that he could not perform or follow other gainful pursuits or employments. This is a function quasi-judicial and not ministerial. State ex rel. Gaddis v. Bryan, *supra;* State ex rel. Garton v. Fulton, *supra;* State ex rel. Cuming County Farm Bureau v. Tighe, *supra;* State ex rel. Davis v. Hoctor, *supra;* Kurth v. City of Lincoln, 162 Neb. 643, 76 N. W. 2d 924; 55 C. J. S., Mandamus, § 124b(2), p. 212; McFeely v. Board of Pension Commissioners of City of Hoboken, 1 N. J. 212, 62 A. 2d 686; Hoyt v. Hughes County, 32 S. D. 117, 142 N. W. 471; Oakman v. City of Eveleth, 163 Minn. 100, 203 N. W. 514.

We have examined each of the cases cited by Watts in support of his petition for writ of mandamus and we find they are clearly distinguishable from the facts in this case or are not pertinent and it would serve no

useful purpose to review them in this opinion. In these cited cases the writ was either denied or the facts and circumstances did not involve the exercise of discretion or judgment judicial in nature. Watts seems to further contend that although the City Council may be acting in a quasi-judicial capacity in determining his eligibility for a full monthly salary disability pension under section 7.36.195 it loses this character at some stage of its deliberations and its function then becomes ministerial in nature. Such an argument defies logical reasoning and explanation. The duty of the City Council under the application of Watts and its function thereunder was either ministerial or quasi-judicial in nature; it was not and could not be both.

In view of our holding in this case all other contentions of Watts need not be considered.

We are of the opinion that the City Council acted quasi-judicially and that the remedy of Watts was to have the action reviewed directly and not by this collateral attack. Mandamus will not lie in such a state of facts.

The judgment of the district court is therefore affirmed.

AFFIRMED.