STATE EX REL. WILLIAM HERMAN, RELATOR, APPELLEE, V. CITY OF GRAND ISLAND ET AL., RESPONDENTS, APPELLANTS.

15 N. W. 2d 341

FILED JULY 28, 1944. No. 31804.

C. E. Cronin, P. C. Holmberg and A. G. Abbott, for appellants.

Harold A. Prince, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

This is a mandamus action filed by relator, appellee, in the district court for Hall county against the city of Grand Island, its mayor and councilmen, respondents, appellants, praying that they be required to place relator on the city retired firemen's pension roll under the provisions of section 2439, Comp. St. 1922. After hearing upon the issues presented the trial court found in favor of relator and by peremptory writ of mandamus ordered that respondents place relator on the city pension roll as a pensioned fireman as of February 9, 1943, at $83.75 per month, payable in the same manner as firemen on the active list are paid.

Respondents appeal from the judgment, contending that the trial court erred in finding that relator had retired from active service; that because of equitable considerations in a war emergency the writ should not be awarded; that mandamus is not a proper remedy for the enforcement of relator's rights; that relator has another action pending in the

district court for Hall county which bars mandamus; and that the decree is not supported by the law and the evidence. We find that the law and the record in the instant case do not support these contentions.

We have presented for decision in this appeal only questions of law under admitted facts. The undisputed evidence is that the city of Grand Island at all times concerned was a city of the first class, maintaining a paid fire department. William Herman, relator, entered the service of the city's fire department on August 8, 1921, and served as a paid fireman therein continuously up to and including February 8, 1943, a period of 21 years and six months.

On September 3, 1941, relator was appointed and qualified as assistant fire chief. He continued to serve in such capacity to and including February 8, 1943, the last day of active service in the department. At the time of his retirement from active service his salary, as provided by city ordinance, was $167.50 per month, that is, $83.75 payable on the 5th and 20th of each month. On February 11, 1943, after a conference with the mayor, relator delivered to the city the following application: "February 11, 1943. To the Honorable Mayor and City Council: Having served the City of Grand Island as a paid fireman for a period exceeding twenty-one years, and having elected to retire from active service and go upon the retired list, I hereby make application for pension as provided by laws of the State of Nebraska. Yours very truly, (Signed) W. J. Herman."

Thereafter on May 19, 1943, by resolution, and not by settlement or agreement with relator, the mayor and city council placed relator upon the city firemen's pension list at $73.75 per month which was $10 less than 50 per cent of the amount of salary he was receiving at the time of his retirement as required by section 2439, Comp. St. 1922. The city paid him at that rate from February 9, 1943, to and including May 31, 1943. Relator then filed a claim with the city for $37.14, a sum representing the difference between the amount of pension allowed by the city and that required by statute during such period. This claim was disallowed,

and, in addition thereto, on June 16, 1943, without notice to relator or his attorney, and in their absence, the mayor and city council passed the following motion: "On motion of Starr, seconded by Krieger, William Herman was cut from the pension payroll until the court decides whether or not he is a retired fireman." Thereupon the city refused to pay his pension. From the disallowance of relator's $37.14 claim by the city, he appealed to the district court for Hall county, and thereafter filed this mandamus action to be restored to the pension list.

We have recently held "that a statute providing for firemen's pensions is a matter of state-wide concern applicable to all cities within the designated class, whether they be home rule cities or not." *Axberg v. City of Lincoln*, 141 Neb. 55, 2 N. W. 2d 613. The effect of such ruling is that the firemen's pension law as a state law controls municipal action. The statute involved in this action is chapter 21, art. II, section 2439, Comp. St. 1922, which, in so far as it is material here, provides: *"Firemen's pension on retirement.* All * * * cities of the first class having a paid fire department, shall pension all firemen of the paid fire department, whenever such firemen shall have first served in such fire department for the period of twenty-one years, and shall elect to retire from active service and go upon the retired list. Such pension shall be paid by the city in the same manner as firemen upon the active list are paid, and such pension shall be at least fifty per cent of the amount of salary such retiring fireman shall be receiving at the time he goes upon such pension list: * * * ." Section 2442, Comp. St. 1922, provides: *"Officers of fire department included.* This article shall apply to officers of paid fire departments in cities of the first class * * * as well as to regularly employed firemen."

Respondents contend that relator did not retire from active service for the reason that after he quit the city fire department he obtained employment in a fire department at an army air base, a separate entity, approximately five miles from Grand Island. It is insisted that relator elected

to retire from active service without in fact retiring; that he just quit or resigned to take other employment, and that the city council was required to exercise discretion or act quasi judicially in determining whether under the statute relator did in fact retire from active service. There is no contention here that relator was not entitled to an honorable discharge.

In a very similar mandamus case, *State ex rel. Haberlan v. Love*, 95 Neb. 573, 145 N. W. 1010, the relator who had served as a paid fireman of the city of Lincoln for more than 21 years, testified, "I just quit." And, in this connection, the court said: "Did Haberlan retire? Haberlan resigned. His resignation was an *election to retire*, and the Standard Dictionary defines 'retire' 'to withdraw from active service, * * * . To separate or withdraw.' (See, also, 54 C. J. 739). In *State v. Mayor and City Council*, 4 Neb. 260, this court say: 'In the absence of some statutory provision, we know of no rule which requires such resignation to be accepted by the municipal authorities, to make it effective. Their refusal, even, to accept it, would not have the effect to compel him to retain the office against his will.' " It would seem conclusive that this court has held specifically that to quit, resign, separate, or withdraw, and retire with respect to the identical law here involved, mean exactly the same thing. Therefore, a fireman employed by a city of the first class having a paid fire department, "elects to retire from active service," as provided by section 2439, Comp. St. 1922, if, having served 21 years, he resigns and requests that he be placed upon the retired list. Such fireman's election to retire from active service is optional on his part, but when exercised by him every prerequisite of the statute is complied with, and his right to a pension under existing law is perfect, whereupon it becomes the statutory duty of the city to put him upon the retired list and pay the pension to which he is lawfully entitled. *State ex rel. Haberlan v. Love*, 89 Neb. 149, 131 N. W. 196, 95 Neb. 573, 145 N. W. 1010; *Pierne v. Valentine*, 291 N. Y. 333, 52 N. E. 2d 890; *Stiles v. Board of Trustees of Police*

*Pension Fund,* 281 Ill. 636, 118 N. E. 202; *McBride v. Allegheny County Retirement Board,* 330 Pa. St. 402, 199 Atl. 130; *Bausewine v. Philadelphia Police Pension Fund Assn.,* 337 Pa. St. 267, 10 Atl. 2d 446; *Mathewson v. Board of Trustees,* 226 Ia. 61, 283 N. W. 256; *Beronio v. Pension Commission of City of Hoboken,* 129 N. J. Law 557, 30 Atl. 2d 503, 130 N. J. Law 620, 33 Atl. 2d 855; *Roddy v. Valentine,* 268 N. Y. 228, 197 N. E. 260. To hold otherwise would not give either reason to words or effectiveness to the act.

In this connection, it is also urged by respondents that relator, who was 56 years of age at the time of his election to retire, is neither superannuated nor disabled, and, thus being still able to find employment as an employee in another fire department, he is not entitled to retire and receive a pension. The legislative act itself disposed of this contention. Section 2439, Comp. St. 1922, should be read in connection with section 2441, Comp. St. 1922, which is a part of the same act. In doing this it is discovered that in section 2439, Comp. St. 1922, there is no thought or suggestion of any disability requirement. Section 2441, Comp. St. 1922, governs pensions for disabilities from accident or other cause while in the line of duty, which is not involved here in any manner or form. Section 2439, Comp. St. 1922, only is involved, which grants a pension after 21 years of service upon election of the fireman to retire from active service and go upon the retired list. There are no requirements in it that a fireman must be of certain age or disabled. There is no requirement that the fireman shall be unable to do any work or obtain other employment or that he thereafter must desist from such economic activities as his physical condition permits. True, many loyal firemen, particularly in times like these, continue in their employment and do not elect to retire from active service, but after they have served as paid firemen for 21 years they are not required by the act so to do, and under this statute the propriety or impropriety of doing so is not for the city council or courts to decide.

In considering the statute before us we are required to

observe the rule that the policy or impolicy of the statutory provision is the exclusive function of the legislature and not of the courts. We must accept the statute as we find it and no requirement which is not in the statute will be or can be considered to govern our action. The general rule is that, "Where the language of the statute is unambiguous there is no necessity for construction and courts cannot change the clear language of a statute." *Stiles v. Board of Trustees of Police Pension Fund, supra.* See, also, *Beronio v. Police Commission of City of Hoboken, supra.* We can only conclude that it is immaterial that a pensioner entitled to a pension under the provisions of section 2439, Comp. St. 1922, is able to or actually does obtain other employment with a separate entity, there being no such exception in the statute.

With reference to equitable considerations arising from the present war emergency, which respondents contend give discretion in the granting or refusal to grant relator a pension, there is a recent well-reasoned case disposing of this contention adversely to respondents. *Beronio v. Police Commissioner of City of Hoboken, supra,* a similar case, decided during the present war emergency, under a statute similar to our own, and in a mandamus action, like claim was made by the city of Hoboken that for equitable principles, in the exercise of sound discretion, the retirement should be denied. The basis of the claim was that in the war emergency, because of a shortage of experienced man power, the city was unable to fill such vacancies, thereby affecting the safety of persons and property. Under such circumstances it was claimed that the right of relator to retire upon a pension should be subordinated to public welfare. The trial court granted a peremptory writ of mandamus. The case was appealed to the supreme court of New Jersey. That court on February 23, 1943, sustained the judgment of the trial court. Thereupon an appeal was taken to the Court of Errors and Appeals, where on September 16, 1943, the judgment of the supreme court of New Jersey was affirmed. In the opinion, reported in 130 N. J.

Law 620, 33 Atl. 2d 855, the court said: "The duty of the Pension Commission was clear and specific; there was no element of discretion with respect to its execution. Neither the denial nor the deferment of the benefits of the act finds sanction in any equitable consideration. There is no tangible basis for the conclusion that observance of the statutory mandate will work radical public injury. There is no evidence of a public emergency that warrants disregard of the peremptory legislative command. It is not within the judicial province to challenge the wisdom of the economy which permits the retirement of able-bodied policemen and firemen at the age of 50 years (and not infrequently to accept employment in private industry at a rate of pay equal to, or nearly so, that received in the civil service) thus placing upon the taxpayers the burden of pensions which bankrupt pension funds are unable to bear. The policy or impolicy of this provision is the exclusive function of the law-making body. It may well be a perversion of the pension principle and violative of all sound tenets of municipal economy, but we have not the faculty of redressing the wrong. The remedy lies with the legislative branch of the government. * * * The denial of mandamus here would constitute a judicial usurpation of the legislative power. It would annul substantial provisions of the statute."

We turn to the question of whether mandamus is a proper remedy for the enforcement of relator's pension rights. Section 20-2156, Comp. St. 1929, provides: "The writ of mandamus may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station. But though it may require an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, it can not control judicial discretion." It is generally held that mandamus only lies to enforce the performance of a ministerial act or duty, and not to control judicial discretion. It has been authoritatively said that, "A duty or act is ministerial in the sense here intended when there is no room for the exercise of

discretion, official or otherwise, the performance being required by direct and positive command of the law. It is such an act as an official or agent is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed. Where the duty in a particular situation is so plainly prescribed as to be free from doubt, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there is provision or implication to the contrary." 34 Am. Jur., sec. 70, p. 859. "Where the duty is such as necessarily requires the examination of evidence and the decision of questions of law and fact, such a duty is not ministerial; but an act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act." 38 C. J., sec. 73, p. 598.

"Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law and must, therefore, in a certain sense, construe it in order to form a judgment from its language as to what duties he is directed by statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law directs him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer." 34 Am. Jur., sec. 72, p. 862. It is generally held that, "The writ of mandamus may issue to compel a public officer to perform a ministerial duty with respect to the allowance or payment of a pension, but it must clearly appear that the duty is one which from its character leaves no discretion in the officer to do or not to do." 40 Am. Jur., sec. 40, p. 993.

In *State ex rel. Pinkos v. Rice*, 98 Neb. 36, 151 N. W.

925, this court held that, "The discretion of a public officer cannot be controlled by mandamus, but when a specific duty is made plain by statute, and the officer is not given any discretion in the matter, one for whose benefit the duty is to be performed may compel its performance by mandamus." It was also held in *State ex rel. Butler County Agricultural Society v. Coufal*, 1 Neb. (Unof.) 128, 95 N. W. 362, that, "Where a specific duty is provided by statute mandamus may be invoked to enforce it, if denied; and the party entitled to such relief will not be forced to pursue his remedy by a circuitous and dilatory action at law." In *State ex rel. Haberlan v. Love*, 89 Neb. 149, 131 N. W. 196, a case almost identical with the one at bar, and involving the same section of the statute, this court said: "This brings us to an important feature of the case, and that is the relator prays for a writ to compel the respondents to enroll him as a retired fireman and place his name upon the pension list. To this extent we are satisfied that the demurrer was improperly sustained." The case was reversed and remanded for further proceedings. After trial on the merits and the granting of a peremptory writ of mandamus by the trial court, the case again reached this court upon appeal. See *State ex rel. Haberlan v. Love*, 95 Neb. 573, 145 N. W. 1010. In the latter opinion this court said: "The judgment of the district court properly granted a peremptory writ of mandamus, * * * . The judgment granting the writ is affirmed, * * * ." See, also, *State ex rel. Rishling v. Allen*, 128 Neb. 675, 260 N. W. 191; *Stiles v. Board of Trustees of Police Pension Fund, supra*. Therefore, it has been the law of this state for more than 30 years that mandamus is a proper remedy to require a city of the first class having a paid fire department to place a fireman upon the retired list and pay him a pension after he has served 21 years and elects to retire from active service, as provided by section 2439, Comp. St. 1922, and we find no valid reason within the law for changing the rule at this time.

*State ex rel. Gaddis v. Bryan*, 102 Neb. 506, 167 N. W.

783, relied upon by respondents, is clearly distinguishable from the case at bar. In that case relator, a fireman, brought an action in mandamus to require the city of Lincoln to place him upon the pension list because of disability, as provided by section 2441, Comp. St. 1922, as distinguished from 21 years' service as provided in section 2439, Comp. St. 1922. The court in that case rightly held that mandamus would not lie to control judicial discretion in determining from the evidence and the law whether the fireman was in fact permanently disabled from accident or other cause while in line of duty. *State ex rel. Cuming County Farm Bureau v. Tighe,* 124 Neb. 578, 247 N. W. 419, is also distinguishable upon like principles of law. No such questions appear in the case at bar. Here, the facts are admitted; the specific duty of the respondents clearly appears and is made plain by statute, leaving no discretion for them to exercise. Therefore, mandamus is the proper remedy to enforce relator's pension rights.

Finally, respondents contend that relator's appeal from the disallowance of his $37.14 claim by the city, to the district court for Hall county bars the present action. By statute, section 20-2157, Comp. St. 1929, and former precedent of this court, a writ of mandamus "may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law." However, there is ample authority that the mere fact that there is another remedy at law will not prevent the issuance of a writ of mandamus unless the other remedy is adequate to afford relief upon the very subject matter involved, a remedy appropriate and effectual to enforce the right or compel performance of the particular duty in question, and a remedy to which the relator may at all times resort for full relief against the party from whom the duty is owing as distinguished from one against a third person. *State ex rel. Campbell v. Slavik,* 144 Neb. 633, 14 N. W. 2d 186. This rule in every respect disposes of respondents' latter contention adversely to them.

We conclude that the judgment of the trial court awarding relator a peremptory writ of mandamus in the manner

and form as ordered is supported by both the law and the evidence, and the judgment is hereby affirmed.

AFFIRMED.